AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
1423 Broadway #1133
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:  510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
JASON DUCHAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON DUCHAN<br><br>    Plaintiff,<br><br>    v.<br><br><br>PI-AQUA, INC. dba NORTH HOLLYWOOD SPA<br><br>    Defendant. | CASE NO. 24-cv-8137<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:**<br><br>1.  **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2.  **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3.  **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

1.     **PREFETORY STATEMENT:** This is Plaintiff's first and currently only Americans with Disabilities Act ("ADA") lawsuit. It does not involve any architectural barriers, only service dog denial claims. Plaintiff's law firm is not a high frequency litigation firm, filing approximately nine cases this year to date in this District. Rein & Clefton represents many different disabled plaintiffs, none of whom are high frequency litigants as defined by state law, and many of whom, like

1    Plaintiff, are seeking representation for ADA claims for the first time.  Plaintiff

2    JASON DUCHAN complains of Defendant PI-AQUA, INC. dba NORTH

3    HOLLYWOOD SPA and alleges as follows:

4        2.    **INTRODUCTION:**  On or about August 17, 2024, Defendant denied

5    disabled Plaintiff Jason Duchan services and admittance to it's spa and recreation

6    facility because he is a disabled individual who uses a task trained service dog to

7    ameliorate his disability.  Despite the fact that Plaintiff informed Defendant that his

8    dog is a trained medical alert service dog, Defendant told Plaintiff that it does not

9    allow dogs of any kind at the North Hollywood Spa. Then, Defendant told Plaintiff

10    that theys do not allow *any* disabled people inside the North Hollywood Spa.  When

11    Plaintiff balked at this blatant discrimination, Defendant's employee told Plaintiff

12    that the North Hollywood Spa is a "private club" so they can exclude disabled

13    people if they choose to. This statement horrified Plaintiff and made him like a

14    second-class customer and unable to enjoy the Spa like everyone else.  Despite the

15    vitriol that Defendant was spewing at Plaintiff, Plaintiff's service dog Roxie

16    remained calm and performed her tasks as necessary.  At no time did Defendant

17    inquire as to the tasks that Roxie is trained to perform for Plaintiff's disability.

18        3.    Plaintiff thought that Defendant's initial denial of his service dog at the

19    North Hollywood Spa may have simply been the result of a rogue employee who

20    lacked training on the issues surrounding disabled access. On September 1, 2024,

21    Plaintiff returned to North Hollywood Spa to try again to use the facilities with his

22    service dog.  However, he was met with the same denial of services that he

23    experienced previously.

24        4.    Defendant refused to serve Plaintiff and allow him to enjoy the

25    facilities at the North Hollywood Spa located at 5636 Vineland Ave, North

26    Hollywood, California, with his service dog. As a result, Plaintiff was denied

27    service by Defendant because of his disability because he needs his service dog to

28    equally enjoy the premises compared with non-disabled persons. Plaintiff was

1 devastated by his interactions with Defendant.

2   5. Defendant's decision to bar Plaintiff from entry because of his service

3 dog contravenes the ADA's mandate to allow disabled persons equal enjoyment of

4 the facility and the Department of Justice's technical assistance and guidance on the

5 subject of "Service Animals."  In relevant part, the guidance states:

6  &bull; A person with a disability cannot be asked to remove his service

7    animal from the premises unless: (1) the dog is out of control and the

8    handler does not take effective action to control it or (2) the dog is not

9    housebroken. When there is a legitimate reason to ask that a service

10    animal be removed, staff must offer the person with the disability the

11    opportunity to obtain goods or services without the animal's presence**.**

12 DOJ 2010 "Service Animal" guidance available at

13 https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis

14 added).

15   6. On August 17, 2024, and September 1, 2024, Defendant refused to

16 allow Plaintiff to inside of its facility due to the presence of his task trained service

17 dog despite that his service dog was under his control, task trained, and is

18 housebroken.  Further, Defendant did not cite either of those as reasons for refusing

19 service to Plaintiff.  Defendant simply told Plaintiff that service dogs and disabled

20 individuals were not allowed to access the facilities at North Hollywood Spa.

21 Defendant also did not offer Plaintiff the opportunity to enter the facility without

22 the presence of  his service dog.

23   7. Plaintiff is a 65-year-old gay man who recently moved to the Los

24 Angeles area from the Bay Area.  Since moving to Los Angeles, Plaintiff has been

25 in search of community, and he has had difficulty meeting other people with similar

26 interests.  Further, as a result of his disability, Plaintiff finds it difficult to meet

27 other people, particularly in crowded places like bars or dance clubs.  A friend

28 recommended that he try to meet other gay men at a spa like North Hollywood Spa,

so Plaintiff thought he would give it a try.  Despite the discrimination Plaintiff experienced when he attempted to enter and use the facilities at North Hollywood Spa, he still believes that meeting people at a spa will be the easiest way for him to make friends and meet other gay men.  Plaintiff intends to return to the North Hollywood Spa to use the facilities and hopefully meet friends in the future but cannot do so until the policies of the spa are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training.  Plaintiff has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate him for refusing to serve him because he is a disabled person who needs the assistance of his qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the North Hollywood Spa.

8.     **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

9.     **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

10.    **INTRADISTRICT:**  This case should be assigned to the Western Division because the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

11.    **PARTIES:**  Plaintiff Jasan Duchan is a "qualified" disabled person who uses the assistance of a service dog to ameliorate his disability.  Plaintiff suffers from post-traumatic stress disorder and hypertension.  Plaintiff's disabilities stem from his experience of being the target of false accusation online and having his life threatened as a result.  Due to this experience, Plaintiff has PTSD which

1  manifests as panic attacks and episodes of dissociation.  Plaintiff has difficulty

2  trusting people, interacting with people, and forming relationships with people.

3  Plaintiff's panic attacks can cause him to hyperventilate which can cause a

4  significant rise in blood pressure.  Since Plaintiff suffers hypertension, significant

5  rises in blood pressure are dangerous to his health, and he must attempt to control

6  those symptoms quickly.

7        12.    Plaintiff relies upon his service dog, a lab/huskie/boxer mix named

8  "Roxie" to assist him with certain tasks including alerting him to the onset of panic

9  and PTSD symptoms so that he can work to calm himself with assistance from

10  Roxie before his blood pressure rises to dangerous levels.  Roxie is also trained to

11  disrupt Plaintiff when he dissociates or freezes.  In order to alert Plaintiff to and

12  disrupt these behaviors, Roxie is trained to stand on her hand legs and put her front

13  paws around Plaintiff to "hug" him. Roxie and Plaintiff worked with a professional

14  trainer in order to train Roxie to perform these tasks.  Roxie was professionally

15  trained to be a service dog, and she and Plaintiff have been working together for 11

16  years.  Additionally, Plaintiff continues to reinforce the training with Roxie daily.

17  Plaintiff is a qualified person with a disability as defined under federal and state law

18  who is substantially limited in the major life activities of interacting with other

19  people, regulating emotions, and being out in public places.  42 U.S.C. § 12102, 29

20  U.S.C. § 705(9)(B), and California Government Code § 12926(1).

21        13.    Defendant PI-AQUA, INC. dba NORTH HOLLYWOOD SPA, are

22  and were at all times relevant to this Complaint the owners, operators, lessors

23  and/or lessees of the subject business located at 5636 Vineland Ave, North

24  Hollywood, California, known as the North Hollywood Spa ("The Spa").

25        14.    The spa is a place of "public accommodation" and a "business

26  establishment" subject to the requirements *inter alia* of the categories of 42 U.S.C.

27  section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil

28  Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

15.   **FACTUAL STATEMENT:**  Plaintiff Jason Duchan has been working with his service dog Roxie for approximately eleven years.  Roxie is a lab/huskie/boxer mix who was professionally trained to be a service dog.  Plaintiff has also trained and continues to train Roxie to serve his specific needs throughout their relationship.  Roxie is specifically trained to assist Plaintiff by alerting him to the onset of panic and PTSD symptoms so that he can work to calm himself with assistance from Roxie before his blood pressure rises to dangerous levels.  Roxie is also trained to alert Plaintiff of and disrupt certain behaviors associated with Plaintiff's PTSD including hyperventilation and dissociation episodes.

16.   Roxie is a working dog; she is not a pet.  Roxie wears a vest identifying her as a service dog. Plaintiff and Roxie have trained extensively together, and they supplement that training daily.  Plaintiff takes Roxie everywhere with him in public.  It is important they stay together as much as possible because (a) Roxie provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. With few exceptions, where Plaintiff goes, Roxie goes.

17.   Plaintiff recently moved to the Los Angeles area after living in San Francisco for many years.  Since moving to Los Angeles, Plaintiff has found meeting people difficult. He would like to meet other gay men who have similar interests as himself.  Unfortunately, Plaintiff's disability makes it very difficult for him to meet people in bars or clubs.  Plaintiff avoids crowds whenever possible. One of Plaintiff's friends suggested that he try out one of the spa's targeted towards gay men in the Los Angeles Area as they were a more relaxing environment to meet people.  Plaintiff began researching spas online which is where he learned about the North Hollywood Spa.  Plaintiff thought that the North Hollywood Spa looked like a good place for him to meet other gay men.  He liked that the facility provides private rooms, which he planned to rent, so that he could escape to be by himself whenever necessary, but also had places where he could workout, enjoy

1    refreshment, and enjoy entertainment.

2         18.   On or about August 17, 2024, Plaintiff decided that he was ready to try

3    a spa.  Plaintiff and Roxie drove to North Hollywood Spa and parked his car.

4    Plaintiff and Roxie exited the vehicle, and they approached the door to the Spa.

5    Plaintiff and Roxie entered the Spa and approached the front desk.  Defendant's

6    employee at the front desk told Plaintiff that dogs are not allowed at the North

7    Hollywood Spa.  Plaintiff explained that Roxie is a medical alert service dog and

8    therefore allowed to accompany him anywhere the public is to go inside of public

9    accommodations.  Defendant's employee said no dogs, including service dogs,

10   were allowed inside the North Hollywood Spa.

11        19.   Plaintiff was understandably upset, and he and Roxie turned around

12   and walked out the door.  However, Plaintiff was only outside for about 30 seconds

13   when he decided to go back inside.  He was determined to convince the man to

14   allow him inside with his service dog.  Plaintiff explained to Defendant's employee

15   that Roxie ameliorates his disability in the same way that a wheelchair ameliorates

16   a physically disabled individual.  He asked Defendant's employee whether he

17   would deny access to a person in a wheelchair.  To this, Defendant's employee

18   responded that disabled individuals are not allowed inside the North Hollywood

19   Spa. Plaintiff was horrified by this response and told Defendant's employee that

20   such a discriminatory policy is contrary to the ADA.  Defendant's employee told

21   Plaintiff that the North Hollywood Spa is a private club and therefore Defendant

22   does not need to follow the ADA.

23        20.   Plaintiff stayed for another few minutes trying to convince

24   Defendant's employee to allow him inside, but it soon became clear that he would

25   never be allowed inside Defendant's public accommodation.  As Plaintiff was

26   leaving, he told Defendant's employee that he planned to contact an attorney

27   regarding his denial of access to the North Hollywood Spa.  Defendant's employee

28   told him to "go ahead and contact an attorney."  Plaintiff left in tears.  Once he had

exited the building, Roxie performed her task by wrapping her front paws around Plaintiff, and he was able to calm himself down enough to drive home.

21.     Plaintiff was angry about the way he had been treated at the North Hollywood Spa, and he was extremely disappointed that he was not allowed to go inside the facility to meet other patrons.  Plaintiff began researching whether Defendant's claims of being a "private club" in fact did give it permission to ignore the ADA.  Plaintiff found that to determine whether a "private club" is exempt from the ADA the following criteria must be considered:

- The degree to which members control club operations
- The selectivity of the membership process
- Whether substantial membership fees are charged
- Whether the organization is operated on a nonprofit basis
- To what extent the facilities are open to the public
- To what extent the club receives public funding
- Whether the club was created specifically to avoid compliance with civil rights laws.

22.     Defendant's "club" members have no control over club operations. Anyone who pays the fee can become a "member" of North Hollywood Spa (unless they are disabled apparently), thus there is no selective process whatsoever in order to join.  The "membership fee" is $40 for five months.  Defendant is a for profit company. Thus, Plaintiff concluded that Defendant's "club" is not a private club exempt from the ADA. Even assuming it were a club, its membership is premised on avoiding allowing disabled persons to join, and avoiding compliance with the ADA, as admitted by the manager.

23.     Armed with this information, Plaintiff decided to return to North Hollywood Spa to attempt to gain entry with his service dog.  On September 1, 2024, Plaintiff again drove to the North Hollywood Spa.  He parked his vehicle, and he and Roxie entered the spa.

24.     Plaintiff and Roxie approached the check-in desk.  Plaintiff said I am disabled, and I have a service dog that I need.  Defendant's employee said, "no dogs allowed."  Plaintiff asked him, "what if I had a wheelchair."  Defendant's employee repeated, "no dogs allowed."  Plaintiff asked, "not even service dogs that are specially trained?" Defendant's employee again told Plaintiff that no dogs are allowed.  Plaintiff asked Defendant's employee why service dogs are not allowed, and Defendant's employee responded that Defendant's employee responded that they do not allow any dogs inside North Hollywood Spa.

25.     Notably on Plaintiff's second visit, Defendant's employee did not claim that North Hollywood Spa is a private club or that Defendant excluded all disabled people, but it was clear to Plaintiff that he was not going to be allowed inside of North Hollywood Spa with his service, so he left the premises.

26.     Plaintiff wishes to return to patronize North Hollywood Spa.  He wants to try to meet people in the Los Angeles area, and he strongly believes that a spa like the one operated by Defendant would allow him to be around people again in a safe way that would not trigger his PTSD. However, Plaintiff cannot return to North Hollywood Spa until *after* Defendant has implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to the spa until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq.*)**

27.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 26, above, and incorporates them herein by reference as if separately repled hereafter.

28.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of

9

discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

29.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

30.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

31.     North Hollywood Spa is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(L).

32.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

33.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

34.     Defendant has a policy and practice of denying treatment and services to patrons with service animals at North Hollywood Spa. This is contrary to the ADA. The Department of Justice issued guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

DOJ 2010 "Service Animal" guidance available at

https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis added).

35.     On information and belief, as of the date of Plaintiff's most recent visits to North Hollywood Spa on or about August 17, 2024, and September 1, 2024, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of Plaintiff's disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

36.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act
(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

37.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility are one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes any "gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation."  42 USC § 12181(7)(L).

38.    The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals

with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure
that no individual with a disability is excluded, denied service, segregated, or
otherwise treated differently than other individuals because of the absence of
auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and
communication barriers that are structural in nature, in existing facilities... where
such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier
under clause (iv) is not readily achievable, a failure to make such goods, services,
facilities, privileges, advantages, or accommodations available through alternative
methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of
Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28
C.F.R. Part 36 *et seq*.

39.    The removal of each of the policy barriers complained of by Plaintiff
as hereinabove alleged, were at all times herein mentioned "readily achievable"
under the standards of sections 12181 and 12182 of the ADA.  As noted
hereinabove, removal of each and every one of the policy barriers complained of
herein were already required under California law.  In the event that removal of any
barrier is found to be "not readily achievable," Defendant still violated the ADA,
per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges,
advantages and accommodations through alternative methods that were "readily
achievable."

40.    On information and belief, as of the dates of Plaintiff's encounters at
the premises and as of the filing of this Complaint, Defendant's actions, policies,
and physical premises have denied and continue to deny full and equal access to
Plaintiff and to other disabled persons who work with service dogs, which violates

Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

41.    Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing North Hollywood Spa and discriminated and continue to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

42.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

43.    Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of § 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such

14

discrimination each time that he may use the property and premises, or attempt to patronize North Hollywood Spa, in light of Defendant's policies barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## SECOND CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

44.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 43 of this Complaint and incorporates them herein as if separately re-pleaded.

45.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

46.    California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

47.    Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

48.    Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law,

1    including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the

2    right of any individual under the Americans with Disabilities Act of 1990 (Public

3    Law 101-336) shall also constitute a violation of this section."

4        49.    The actions and omissions of Defendant as herein alleged constitute a

5    denial of access to and use of the described public facilities by disabled persons

6    who use service dogs within the meaning of California Civil Code sections 51 and

7    52.  As a proximate result of Defendant's action and omissions, Defendant has

8    discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are

9    responsible for statutory and compensatory to Plaintiff, according to proof.

10        50.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions and

11    conduct, Plaintiff has been required to incur attorney fees, litigation expenses and

12    costs as provided by statute in order to enforce Plaintiff's rights and to enforce

13    provisions of law protecting access for disabled persons and prohibiting

14    discrimination against disabled persons.  Plaintiff therefore seeks recovery of all

15    reasonable attorney fees, litigation expenses and costs pursuant to the provisions of

16    California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is

17    intended to require that Defendant make its facilities and policies accessible to all

18    disabled members of the public, justifying "public interest" attorney fees, litigation

19    expenses and costs pursuant to the provisions of California Code of Civil Procedure

20    section 1021.5 and other applicable law.

21        51.    Plaintiff suffered damages as above-described as a result of

22    Defendant's violations.

23        WHEREFORE, Plaintiff prays for relief as hereinafter stated.

24                    **THIRD CAUSE OF ACTION:**
                  **DAMAGES AND INJUNCTIVE RELIEF**
25        **FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC**
               **FACILITIES  IN A PUBLIC ACCOMMODATION**
26                    **(Civil Code §§ 54 *et seq.*)**

27        52.    Plaintiff re-pleads and incorporates by reference, as if fully set forth

28    hereafter, the factual allegations contained in Paragraphs 1 through 51 of this

1   Complaint and all paragraphs of the third cause of action, as plead infra,

2   incorporates them herein as if separately re-pleaded.

3        53.    Under the California Disabled Persons Act (CDPA), people with

4   disabilities are entitled to the "full and free use of . . . public buildings, . . . public

5   facilities, and other public places."  Civil Code § 54(a).

6        54.    Civil Code section 54.1(a)(1) further guarantees the right of "full and

7   equal access" by persons with to "accommodations, advantages, facilities, medical

8   facilities, including hospitals, clinics, and physicians' offices…or other places to

9   which the general public is invited."  Civil Code § 54.1(c) also specifies that,

10  "individuals with a disability and persons authorized to train service dogs for

11  individuals with a disability, may take dogs, for the purpose of training them as

12  guide dogs, signal dogs, or service dogs in any of the places specified in

13  subdivisions (a) and (b)."

14       55.    Civil Code section 54.2(a) specifically protects the right of "every

15  individual with a disability" "to be accompanied by a guide dog, signal dog, or

16  service dog, especially trained for the purpose, in any of the places specified in

17  Section 54.1."

18       56.    Civil Code section 54.3(b) makes liable "Any person or persons, firm

19  or corporation who denies or interferes with admittance to or enjoyment of the

20  public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the

21  rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This

22  section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but

23  is not limited to, preventing or causing the prevention of a guide dog, signal dog, or

24  service dog from carrying out its functions in assisting a disabled person."

25       57.    Defendant is also in violation of California Penal Code section

26  365.5(b) which states:

27        No blind person, deaf person, or disabled person and his or her specially
          trained guide dog, signal dog, or service dog shall be denied admittance
28        to accommodations, advantages, facilities, medical facilities, including

17

hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

58.     North Hollywood Spa is a public accommodation within the meaning of the CDPA.  On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

59.     Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from their public accommodation and thereby deny Plaintiff's his right of entrance into their place of business with his service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being essentially barred from entering this public accommodation and place of business based upon Defendant's exclusion of Plaintiff's legally protected use of his service dog.  Plaintiff has continued to suffer denial of access to these facilities, and he faces the prospect of unpleasant and discriminatory treatment should he attempt to return to these facilities.  Plaintiff is unable to return to North Hollywood Spa until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since August 17, 2024, all to his statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

60.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled and who require the assistance of service animals from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that Plaintiff is a person with disabilities who requires the assistance of a service animal.

61.    Plaintiff wishes to return to patronize North Hollywood Spa but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continues, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize North Hollywood Spa and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

62.    The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.   As to the Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons and those associated with them, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

63.    Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

64.    **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning,

operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated. Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that he was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize North Hollywood Spa and will continue to cause him damages each day these barriers to access and policy barriers continue to be present.

65. Although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for Plaintiff's rights and safety.

66. **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all

1   reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions

2   of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to

3   require that Defendant make its facilities accessible to all disabled members of the

4   public, justifying "public interest" attorney fees, litigation expenses and costs

5   pursuant to the provisions of California Code of Civil Procedure section 1021.5 and

6   other applicable law.

7        67.    Plaintiff suffered damages as above described as a result of

8   Defendant's violations.  Damages are ongoing based on their deterrence from

9   returning to North Hollywood Spa.

10       WHEREFORE, Plaintiff prays for relief as hereinafter stated.

11                                 **PRAYER**

12       Plaintiff has no adequate remedy at law to redress the wrongs suffered as set

13   forth in this Complaint.  Plaintiff has suffered and will continue to suffer

14   irreparable injury as a result of the unlawful acts, omissions, policies, and practices

15   of the Defendant as alleged herein, unless Plaintiff is granted the relief he requests.

16   Plaintiff and Defendant have an actual controversy and opposing legal positions as

17   to Defendant's violations of the laws of the United States and the State of

18   California. The need for relief is critical because the rights at issue are paramount

19   under the laws of the United States and the State of California.

20       WHEREFORE, Plaintiff Jason Duchan prays for judgment and the

21   following specific relief against Defendant:

22       1.    An order enjoining Defendant, its agents, officials, employees, and all

23   persons acting in concert with them:

24            a.   From continuing the unlawful acts, conditions, and practices described

25                 in this Complaint;

26            b.   To modify its policies and practices to accommodate service dog users

27                 in conformity with federal and state law, and to advise Plaintiff that his

28                 service dog will not be excluded should he desire to enter and

21

1               patronize North Hollywood Spa;

2          c.  That the Court issue preliminary and permanent injunction directing

3               Defendant as current owner, operator, lessor, and/or lessee and/or its

4               agents of the subject property and premises to modify the above

5               described property, premises, policies and related policies and

6               practices to provide full and equal access to all persons, including

7               persons with disabilities; and issue a preliminary and permanent

8               injunction pursuant to ADA section 12188(a) and state law directing

9               Defendant to provide facilities usable by Plaintiff and similarly

10              situated persons with disabilities and which provide full and equal

11              access, as required by law, and to maintain such accessible facilities

12              once they are provided and to train Defendant's employees and agents

13              in how to recognize disabled persons and accommodate their rights

14              and needs;

15          d.  An order retaining jurisdiction of this case until Defendant have fully

16              complied with the orders of this Court, and there is a reasonable

17              assurance that Defendant will continue to comply in the future absent

18              continuing jurisdiction;

19       2.     An award to Plaintiff of statutory, actual, general, and punitive

20  damages in amounts within the jurisdiction of the Court, all according to proof;

21       3.     An award of civil penalty as against Defendant under California Penal

22  Code § 365.5(c);

23       4.     An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a,

24  California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5,

25  and as otherwise permitted by law, of the costs of this suit and reasonable attorneys'

26  fees and litigation expenses;

27       5.     An award of prejudgment interest pursuant to Civil Code § 3291;

28       6.     Interest on monetary awards as permitted by law; and

7.     Grant such other and further relief as this Court may deem just and proper.

Date: September 23, 2024                REIN & CLEFTON

                                        */s/ Aaron M. Clefton*
                                        By AARON M. CLEFTON, Esq.
                                        Attorneys for Plaintiff
                                        JASON DUCHAN

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: September 23, 2024                REIN & CLEFTON

                                        */s/ Aaron M. Clefton*
                                        By AARON M. CLEFTON, Esq.
                                        Attorneys for Plaintiff
                                        JASON DUCHAN

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES